# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **KEITH J. ANTHONY, JR., #R61036,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.   21-cv-435-RJD** |
| | ) | |
| **SHANE BLUMHORST, et. al,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

**DALY, Magistrate Judge:**

This matter is before the Court on Defendants' Motion to Dismiss (Docs. 58blu and 59). Plaintiff responded (Doc. 60).   As explained further, Defendants' Motion is GRANTED IN PART and DENIED IN PART.

## INTRODUCTION

Plaintiff is an inmate of the Illinois Department of Corrections, formerly housed at Menard Correctional Center ("Menard) and currently housed at Pontiac Correctional Center ("Pontiac") (Doc. 31).   He filed this case pursuant to 42 U.S.C. §1983, alleging Defendants Shane Blumhorst and Zachary Fenton (both correctional officers at Menard) intentionally fingernail clipper pieces in his cell while he was on crisis watch and encouraged him to commit suicide (Doc. 1).   After the Court conducted a preliminary review of Plaintiff's Complaint pursuant to 28 U.S.C. §1915A, the case proceeded against Defendants Blumhorst and Fenton on claims that Defendants violated Plaintiff's First and Eighth Amendment Rights under the U.S. Constitution, as well as a claim for intentional infliction of emotional distress (Doc. 9).   Anthony Wills, the Warden at Menard

Correctional Center, is a defendant in his official capacity for the purpose of carrying out potential injunctive relief (*Id.*).

The Court granted Plaintiff leave to amend his Complaint, alleging the following facts. Plaintiff has multiple mental disorders and was placed in IDOC custody in 2016.   In February 2019, while residing at Menard, he submitted a grievance regarding Defendant Fenton retaliating against him.   On November 3, 2020, he filed a PREA (Prison Rape Elimination Act) complaint against Defendant Blumhorst.   He was placed on suicide watch at Menard on November 8, 2020. Because he was on suicide watch, his cell was empty except for a mattress with no linens.   He only had a smock to wear.   Defendant Fenton was the "active healthcare sergeant" on duty for Plaintiff's cell block on November 8, 2020.   Defendant Blumhorst (a correctional officer) was also assigned to Plaintiff's cell block on that date.   Plaintiff was escorted by Defendant Blumhorst to discuss a grievance Plaintiff had submitted.   When he returned to his cell, he found a Styrofoam tray that contained four metal parts of fingernail clippers.   Plaintiff called out to Defendant Blumhorst and asked about the clipper pieces.   Defendant Blumhorst responded that "those were a gift from myself and Sergeant. Do yourself a favor and kill yourself with them so we won't eventually have to do it for you [racial expletive]!"

The next day, Plaintiff refused to leave his cell to receive mental health treatment, as required for inmates on suicide watch.   Consequently, a mental health worker appeared at his cell. Plaintiff showed her the pieces and told her what Defendant Blumhorst had said to him.   As the mental health worker watched, Plaintiff swallowed all four pieces out of fear for his safety, further harassment, and/or retaliation.    Plaintiff received medical treatment at a nearby hospital, but he continues to have pain and emotional distress from this incident.

When he returned to Menard, he was placed on continuous suicide watch at the same cellblock were Defendants Fenton and Blumhorst were assigned.   Over the next few days, he went on several hunger strikes and asked to speak with Defendants Wills (the warden at Menard) and Rowland (a major assigned to Plaintiff's cellhouse) to request a "keep separate from" regarding Defendants Blumhorst and Fenton.   Defendants Wills and Rowland refused to speak with Plaintiff and denied his "keep separate from" request, though they were both aware that Plaintiff had submitted the February 2019 grievance regarding Defendant Fenton and that Plaintiff had recently submitted the PREA complaint against Defendant Blumhorst.

Plaintiff's Amended Complaint contains the following claims against Defendants:

Count I:      Eighth Amendment deliberate indifference claim against Defendants Blumhorst and Fenton for placing metal pieces in Plaintiff's cell while he was on suicide watch.

Count II:     Eighth Amendment failure to intervene claim against Defendants Wills and Rowland.

Count III:    First Amendment retaliation claim against Defendants Blumhorst and Fenton.

Count IV:     Eighth Amendment excessive use of force claim against Defendants Blumhorst and Fenton.

Count V:      State law intentional infliction of emotional distress claim against Defendants Blumhorst and Fenton.

Count VI:     State law battery claim against Defendants Blumhorst and Fenton.

Count VII:    State law assault claim against Defendants Blumhorst and Fenton.

Count VIII:   Injunctive and declaratory relief to prohibit Plaintiff from being transferred back to Menard.

Pending before the Court is Defendants' Motion to Dismiss all claims against Defendant Fenton, Count II, and Counts IV-VIII.

## LEGAL STANDARD

In considering a motion to dismiss, the Court accepts as true all well-pleaded allegations. *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011) (internal citations omitted). A claimant survives a motion to dismiss if the alleged facts "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To determine whether the claim "has facial plausibility," the Court looks to see whether "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McCauley*, 671 F.3d at 615.

**Count I: Deliberate indifference against Defendant Fenton**

In Count I, Plaintiff must establish that Defendants knew of and "consciously disregarded a substantial risk of harm" to Plaintiff regarding the metal nail clipper pieces. *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022). Defendant Fenton contends that he should be dismissed from Count I because Plaintiff merely "speculates" that Defendant Blumhorst was referring to Defendant Fenton when he (allegedly) told Plaintiff the nail clippers "were a gift from myself and Sergeant. Do yourself a favor and kill yourself with them." However, Plaintiff also alleges that Defendant Fenton was the "active healthcare Sergeant" on that date and therefore Count I shall proceed against Defendant Fenton (as well as Defendant Blumhorst).

**Count II: Failure to Intervene against Defendants Wills and Rowland**

Plaintiff's allegations do not adequately state a claim for failure to intervene against Defendants Wills and Rowland. A correctional officer may be held liable if he/she "has the opportunity to step forward and prevent a fellow officer from violating a plaintiff's [Eighth Amendment] right." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (internal citations

omitted).    Plaintiff must allege that Defendants Rowland and Wills were aware that Plaintiff faced a "specific, credible, and imminent risk of serious harm" from Defendants Fenton and Blumhorst.   *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015).   Plaintiff alleges that prior to November 8, 2020 (the date he received the fingernail clipper parts from Defendants Fenton and Blumhorst), Defendants Rowland and Wills were aware of the following: 1) Plaintiff submitted a grievance regarding Defendant Fenton in February 2019; 2) Plaintiff submitted a PREA complaint against Defendant Blumhorst on November 3, 2020; 3) Plaintiff was placed on suicide watch on November 8, 2020 in the north-2 cellhouse at Menard; 4) Defendant Rowland was the Major of the north-2 cellhouse.   From these sparse allegations, the Court cannot reasonably infer that Defendants Rowland and Wills were aware that Plaintiff was facing a "specific, credible, and imminent risk of harm" on November 8, 2020 from Defendants Blumhorst and Fenton.

Plaintiff further alleges that after he was discharged from the hospital (where the fingernail parts were removed) and returned to Menard, he tried to contact Defendants Rowland and Wills and requested that they keep him separate from Defendants Fenton and Blumhorst.   However, Plaintiff does not allege that Defendants Blumhorst and Fenton subsequently violated his constitutional rights after Plaintiff made the requests to Defendants Rowland and Wills. Accordingly, Count II must be dismissed because "[i]t is the reasonably preventable assault itself, rather than any fear of assault" that gives rise to a failure to intervene claim.   *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996).

**Count IV: Excessive Force against Defendants Blumhorst and Fenton**

The key inquiry in an Eighth Amendment excessive force claim is whether the "officer's

use of force was legitimate or malicious." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009).   Of course, the facts alleged by Plaintiff-that Defendants Fenton and Blumhorst gave him fingernail clipper parts and told him to kill himself or they would do it-reflect maliciousness. Regardless, first there must be an intentional "force applied." *McCottrell v. White*, 933 F.3d 651, 665 (7th Cir. 2019).   Plaintiff does not allege that Defendants attempted to use the clipper parts themselves to injure Plaintiff, or that Defendants made any other act of force towards Plaintiff.

In response to Defendants' Motion to Dismiss, Plaintiff cites two excessive force cases from this district that advanced past the pleading stage. *Mrdjenovich v. Bebout, et al*., Case No. 20-cv-324-RJD, 2021 WL 1208904 (S.D. Ill. Mar. 31, 2021); *West v. Rakers*, Case No. 16-cv-984-NJR, 2016 WL 7179121 *4 (S.D. Ill. Dec. 9, 2016).   In those cases, some type of immediate physical contact was alleged, e.g., the use of mace, slamming a prisoner's hand in the cell door. The Court acknowledges that Plaintiff alleges Defendants threatened him, and that in some instances, a threat or warning may constitute excessive force if it is coupled with an intent to make contact (as well as malice).   *McCottrell*, 933 F.3d at 665-666.   However, implicit in these cases is the requirement that the threat be imminent, and what Plaintiff has alleged here ("kill yourself so we won't eventually have to do it for you") is too vague and far removed from the presence of nail clippers in Plaintiff's cell to be considered excessive force.   *See id*.   The Eighth Amendment *does* provide a remedy to Plaintiff for Defendants' alleged actions, but the proper claim is for deliberate indifference, not excessive force.

**Count V: State law intentional infliction of emotional distress claim against Defendants Blumhorst and Fenton**

This Court retains supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. §1367(a) so long as the state claims "derive from a common nucleus of operative fact" with

the original federal claims.   *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 937 (7th Cir. 2008).

Cir. 2008).   "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d

480, 495 (7th Cir. 2008).   Here, Plaintiff's allegations in Count I (Eighth Amendment deliberate

indifference claim) are identical to the allegations in Count V.

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must

demonstrate that (1) the defendant "engaged in extreme and outrageous conduct"; 2) the defendant

either intended to inflict severe emotional distress "or knew there was a high probability that [his]

conduct would cause severe emotional distress"; and 3) the defendant's "conduct in fact caused

severe emotional distress."   *McGreal v. Village Orland Park*, 850 F.3d 308, 315 (7th Cir. 2017)

(internal quotations omitted).   In this case, Plaintiff's allegations (that Defendants Blumhorst and

Fenton knew he was mentally ill, gave him parts of fingernail clippers while he was on suicide

watch, told him to kill himself or they would eventually do it, causing Plaintiff mental anguish and

increased anxiety) satisfy the requirements for his intentional infliction of emotional distress claim.

Defendants contend that Plaintiff's allegations do not rise to the level of outrageous conduct

necessary to sustain an intentional infliction of emotional distress claim.   This argument is not

convincing, as threatening to kill a prisoner on suicide watch if he does not kill himself, and giving

him tools to do so, is clearly outrageous behavior.

**Counts VI and VII: State law battery and assault claims against Defendants Blumhorst and Fenton**

To state a claim for battery, Plaintiff's allegations must establish that Defendants

performed "some affirmative act intended to cause an unpermitted contact" with Plaintiff.   *Flores*

*v. Santiago*, 2013 Il App (1st) 122454, ¶14 (internal citations omitted).   The "unwanted touching"

may be made by the tortfeasor or by "substance or force put in motion" by the tortfeasor.   *Pechan*

*v. Dynapro, Inc.*, 251 Ill.App.3d 1072, 1983 (2d Dist. 1993).    *Id*.   Plaintiff relies on the same allegations made in Counts I (deliberate indifference) and V (intentional infliction of emotional distress) to state a claim for battery, contending that his own act of swallowing the fingernail clippers consisted of "unwanted touching" and Defendants placing the fingernail clippers on his tray and threatening him were the affirmative acts intended to cause the unpermitted contact.

Defendants contend that because Plaintiff does not allege that he swallowed the fingernail clippers until the day after he received them (and the threat), and Defendants were not present when he swallowed them, Plaintiff fails to state a claim for battery.   Plaintiff acknowledges that he swallowed the fingernail clippers on his own volition, but did so because of the duress caused by Defendants' alleged threat.   The Court is aware of battery cases that survived the initial pleading stage where the plaintiff committed an act of his/her own apparent volition yet the alleged touching was "unwanted" because of duress caused by the alleged tortfeasor; this fact pattern sometimes arises in sexual assault cases.  *Flores,* 2013 Il App (1st) 122454, ¶¶14-17; *see also Bianca v. Univ. of Illinois*, 513 F. Supp.3d 983, 990 (N.D. Ill. 2021).    But in those cases, the alleged tortfeasor was present with the plaintiff when the unwanted contact occurred.  *See id*. Plaintiff does not point the Court to any authority-and the Court is unaware of any-that allows a battery claim to proceed based on a threat that purportedly leads to events that occur outside of the tortfeasor's presence.   The Court finds that Plaintiff's act of swallowing the fingernail clipper pieces is too far removed from Defendants' alleged act of placing the fingernail clippers on his tray (and threatening him) the previous day to state a claim for battery.

Similarly, an assault claim must allege "a reasonable apprehension of imminent battery." *Censke v. U.S.*, 27 F. Supp.3d 920, 932 (N.D. Ill. 2015).   Plaintiff's allegations establish that

Defendants' threat was not imminent-Defendants allegedly told him that "eventually" they would kill him.   Accordingly, the events alleged by Plaintiff neither state a claim for battery nor assault. Counts VI and VII are dismissed without prejudice.

**Count VIII:   Injunctive and declaratory relief to prohibit Plaintiff from being transferred back to Menard Correctional Center**

Generally, a prisoner's request for injunctive relief relevant to a particular institution is moot once the prisoner transfers to another facility.  *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996).   To continue with a request for injunctive relief, the plaintiff must establish that "he is likely to be retransferred."  *Id*.   (internal quotations omitted).   Plaintiff has been transferred to Pontiac Correctional Center and stipulates in his Response to Defendants' Motion to Dismiss that at this time, he will remain at Pontiac for the foreseeable future and withdraws his request for injunctive and declaratory relief.   Consequently, Count VIII is dismissed without prejudice.

**CONCLUSION**

Counts II, IV, VI, VII, and VIII are DISMISSED WITHOUT PREJUDICE. Defendants Rowland and Wills are DISMISSED WITHOUT PREJUDICE.   The Clerk of Court is directed to enter judgment accordingly at the close of the case.   Defendants' Motion to Dismiss is otherwise DENIED.   This case proceeds on Counts I, III, and V.

**IT IS SO ORDERED.**

**DATED: July 27, 2022**

*s/ Reona J. Daly*

**Hon. Reona J. Daly**
**United States Magistrate Judge**